# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BARBARA W. MILDREN and RAYMOND MILDREN, <br>     Plaintiffs <br><br> v. <br><br> GARRETT LEE WATKINS, et al., <br>     Defendants | No. 1:18-cv-01403 <br><br> (Judge Kane) |

## MEMORANDUM

Before the Court are: (1) Defendant United Rentals, Inc.'s ("United Rentals")[1] Motion to Dismiss Plaintiffs' Third Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. No. 34); and (2) Defendant SpringLine Excavating, LLC's ("SpringLine") Motion to Dismiss Plaintiffs' Third Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(2) (Doc. No. 25). For the following reasons, the Court will grant the motions.

## I. BACKGROUND[2]

Plaintiffs Raymond Mildren and Barbara W. Mildren ("Plaintiffs") allege that their claims arise out of a motor vehicle collision occurring on Tuesday, November 22, 2016 "at the intersection of Interstate 81 traveling towards York and Maryland in Dauphin, Pennsylvania." (Doc. No. 41 ¶ 8.) Plaintiffs allege that as Raymond Mildren was driving on Interstate 81, their car was struck by a pick-up truck operated by Defendant Garrett Lee Watkins ("Watkins"). (Id.) Plaintiffs allege that Watkins "suddenly without warning, failed to slow down and stop in traffic

---

[1] In its Motion to Dismiss Plaintiffs' Third Amended Complaint, Defendant United Rentals notes that it is properly named as United Rentals (North America), Inc. instead of United Rentals, Inc. (Doc. No. 34 at 1.) The Court will direct the Clerk to adjust United Rentals' name on the docket.

[2] The following factual background is taken from the allegations of Plaintiffs's Third Amended Complaint. (Doc. No. 41.)

colliding hard with Plaintiff's vehicle." (Id.) Plaintiffs allege that the pick-up truck driven by Watkins was owned by Defendant SpringLine, and at the time of the collision, Watkins was employed by Defendant Energy MAT Alliance, LLC ("Energy MAT"). (Id.) Plaintiffs allege that Raymond Mildren "was injured and continues to suffer injuries and damages from this incident," and that as a result of those injuries, Barbara W. Mildren "has suffered, and continues to suffer a loss of consortium and has suffered damages to her relationship with her husband." (Id. ¶¶ 9-10.)

On July 16, 2018, Plaintiffs filed a complaint in this Court asserting claims against Defendants Watkins and SpringLine arising out of the automobile collision. (Doc. No. 1.)[3] Several days later, Plaintiffs filed an amended complaint. (Doc. No. 4.) After service of the amended complaint on Defendants Watkins and SpringLine, the parties filed a Stipulation (Doc. No. 15), on October 4, 2018, memorializing their agreement to permit Plaintiffs to file a Second Amended Complaint, which they filed on the same date (Doc. No. 16). Plaintiffs' Second Amended Complaint added a third defendant, Energy MAT. (Id.) Defendant Watkins filed an answer to the Second Amended Complaint on October 25, 2018 (Doc. No. 21), while Defendant SpringLine filed a motion to dismiss the Second Amended Complaint on October 24, 2018 (Doc. No. 19), based on an alleged lack of personal jurisdiction over it.

On November 15, 2018, without seeking permission from the Court to do so, Plaintiffs filed a Third Amended Complaint purporting to add a fourth defendant, United Rentals.[4] (Doc. No. 22.) Defendant SpringLine filed a motion to dismiss Plaintiffs' Third Amended Complaint

---

[3] Plaintiffs' complaint premises jurisdiction in this Court on 28 U.S.C. § 1332(a)(1), on the basis that Plaintiffs are residents of the state of Texas, Defendant Watkins is a resident of the Commonwealth of Pennsylvania, and Defendant SpringLine, whose principal place of business is located in the state of Michigan, is a resident of Michigan. (Id.)

[4] Plaintiffs' Third Amended Complaint alleges that Defendant SpringLine rented the vehicle driven by Defendant Watkins from United Rentals. (Doc. No. 41 ¶¶ 19-20.)

on November 28, 2018.  (Doc. No. 25.)  Defendant Watkins filed an answer to the Third Amended Complaint asserting cross-claims against Defendant Energy MAT and proposed Defendant United Rentals.  (Doc. No. 28.)

On December 4, 2018, this Court issued an Order striking the Third Amended Complaint for failure to comply with Federal Rule of Civil Procedure 15(a) and Local Rule 15.1 which governs amendment of pleadings.  (Doc. No. 29.)  The Court's Order granted Plaintiffs permission to file a motion for leave to file a Third Amended Complaint compliant with the relevant rules within fourteen (14) days.  (Id.)  On December 6, 2018, Plaintiffs filed a motion for leave to file a Third Amended Complaint (Doc. No. 31), with the proposed Third Amended Complaint attached as Exhibit A (Doc. No. 31-1), again purporting to add a fourth defendant, United Rentals.  Subsequently Defendants SpringLine and Watkins filed a response indicating their lack of objection to the filing of a Third Amended Complaint.  (Doc. No. 33.)  Proposed Defendant United Rentals filed a motion to dismiss the Third Amended Complaint on December 12, 2018.  (Doc. No. 34.)

The Third Amended Complaint asserts the following claims against the various defendants:  (1) negligence against Defendant Watkins (Count I); (2) negligent entrustment and negligent supervision against Defendant SpringLine (Counts II and III); (3) negligent entrustment, negligent supervision, and respondeat superior against Defendant Energy MAT (Counts IV, V and VI); and (4) negligent entrustment and vicarious liability "pursuant to Federal Motor Carrier Safety Regulations" against United Rentals (Counts VII and VIII).  (Doc. No. 41 at 3-7.)

On December 12, 2018, Plaintiffs filed a motion to stay deadlines for responding to Defendant SpringLine's motion to dismiss (Doc. No. 36), maintaining that the Court should stay

any further briefing (and any decision) on Defendant SpringLine's motion to dismiss for ninety (90) days to allow for the completion of basic discovery regarding Defendant SpringLine's potential role in the incident giving rise to this litigation, as well as its contacts with the Commonwealth of Pennsylvania. (Id.) The defendants did not oppose the motion.[5]

On January 3, 2019, the Court issued an Order that: (1) granted Plaintiffs' motion for leave to file a Third Amended Complaint, and deemed Plaintiffs' Third Amended Complaint (Doc. No. 41) filed as of that date; (2) deemed Defendant Watkins' answer (Doc. No. 28), and Defendants SpringLine and United Rentals' motions to dismiss (Doc. Nos. 25, 34), responsive to Plaintiffs' Third Amended Complaint; (3) granted Plaintiffs' motion to stay deadlines for responding to Defendant SpringLine's motion to dismiss and stayed further briefing on that motion, as well as Defendant United Rentals' motion to dismiss, for a period of forty-five (45) days, or until February 15, 2019, making Plaintiffs' briefs in opposition to the two motions to dismiss due fourteen (14) days after February 15, 2019. (Doc. No. 40 at 4.)

On February 22, 2019, Defendants Watkins and SpringLine filed a response to Defendant United Rentals' motion to dismiss, indicating that they do not oppose Defendant United Rentals' motion.[6] (Doc. No. 43.) Plaintiffs did not file a brief in opposition to Defendant United Rentals' motion. Accordingly, the Court deems Defendant United Rentals' motion to dismiss unopposed. However, on March 1, 2019, Plaintiffs did file a brief in opposition to Defendant SpringLine's motion to dismiss (Doc. No. 44), with a supporting affidavit (Doc. No. 45). On March 14, 2019,

---

[5] While not opposing Plaintiffs' motion to stay deadlines, Defendant SpringLine requested that any jurisdictional discovery permitted by the Court conclude by February 15, 2019. (Doc. No. 39.)

[6] Because Defendant Watkins' answer asserted cross-claims against Defendants Energy MAT and United Rentals for contribution and/or indemnity (Doc. No. 28 at 12), the Court construes Defendant Watkins' lack of opposition to Defendants' United Rentals motion to dismiss Plaintiffs' claims asserted against it as his lack of opposition to the dismissal of Defendant Watkins' cross-claim against United Rentals.

Defendant SpringLine filed a reply brief in further support of its motion to dismiss (Doc. No. 51), with supporting exhibits (Doc. Nos. 51-1 to 51-3).

Also on March 14, 2019, Defendant Watkins filed a Stipulation to withdraw his crossclaims asserted against Defendant Energy MAT. (Doc. No. 48.) Defendant Energy MAT filed its Answer and Affirmative Defenses to Plaintiffs' Third Amended Complaint (Doc. No. 49) on the same date. The pending motions to dismiss are ripe for disposition.

## II.     LEGAL STANDARD

### A.     Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

A motion filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint's factual allegations. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks omitted) (interpreting Fed. R. Civ. P. 8(a)). Generally, a court considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) must determine whether the complaint contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678.

Consistent with the Supreme Court's rulings in Twombly and Iqbal, the Third Circuit requires district courts to engage in a two-part analysis when reviewing a Rule 12(b)(6) motion: (1) first, a court should separate the factual and legal elements of a claim, accepting well-pleaded factual matter and disregarding legal conclusions; (2) second, a court should determine whether the remaining well-pled facts sufficiently demonstrate that a plaintiff has a "plausible claim for relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (quoting Iqbal, 556

U.S. at 679). Facial plausibility exists when the plaintiff pleads factual content "that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (internal citations omitted).

In conducting its analysis, a court must accept all well-pleaded factual allegations in the complaint as true for purposes of determining whether the complaint states a plausible claim for relief, and must view the factual allegations in the light most favorable to the plaintiff. Phillips v. Cty of Allegheny, 515 F.3d 234, 231 (3d Cir. 2008). The court's determination on Rule 12(b)(6) review is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." United States ex rel. Wilkins v. United Health Grp., Inc., 659 F.3d 259, 302 (3d Cir. 2011) (internal citations omitted). The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 663-64.

In ruling on a 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)). A court may also consider "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004)).

  **B. Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(2)**

Federal Rule of Civil Procedure 12(b)(2) permits a defendant to bring a motion challenging the court's right to exercise personal jurisdiction over it. Fed. R. Civ. P. 12(b)(2). Once "the defendant raises the question of personal jurisdiction, the plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction." Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 146 (3d Cir. 1992). At the pleading stage, a plaintiff is required only to establish a prima facie case of personal jurisdiction over the defendant, and the court must accept the plaintiff's allegations as true and construe disputed facts in the plaintiff's favor. See Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009); Carteret Sav. Bank, 954 F.2d at 146. Further, a court may consider the parties' affidavits and other evidence when making determinations regarding personal jurisdiction. See Metcalfe, 566 F.3d at 330; Connell v. CIMC Intermodal Equip., No. 1:16-cv-714, 2016 WL 7034407, at *1 (M.D. Pa. Dec. 2, 2016).

"A federal court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of the state." Carteret Sav. Bank, 954 F.2d at 144-45 (quoting Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n, 819 F.2d 434, 436 (3d Cir. 1987)). Pennsylvania's long-arm statute permits the Court to exercise personal jurisdiction "to the fullest extent allowed under the Constitution of the United States." 42 Pa. Cons. Stat. § 5322(b). Therefore, in its exercise of personal jurisdiction, this Court is constrained only by the Due Process Clause of the United States Constitution, which requires that a defendant has "certain minimum contacts with [the forum state] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." See O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 316 (3d Cir. 2007) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). Requiring "minimum contacts" between the defendant and the forum

state gives "fair warning" to a defendant that he or she may be called to defend a lawsuit in that state. See Marten v. Godwin, 499 F.3d 290, 296 (3d Cir. 2007) (quotation omitted).

Two types of personal jurisdiction comport with these notions of due process: specific and general jurisdiction. See Daimler AG v. Bauman, 134 S. Ct. 746 (2014). Specific jurisdiction encompasses cases "in which the suit 'aris[es] out of or relate[s] to the defendant's contacts with the forum.'" See id. at 754 (citations omitted). A court's determination as to whether the exercise of specific jurisdiction is proper entails a three-part inquiry: (1) "the defendant must have 'purposefully directed [its] activities' at the forum"; (2) "the litigation must 'arise out of or relate to' at least one of those activities"; and (3) "if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise 'comport[s] with 'fair play and substantial justice.'" See O'Connor, 496 F.3d at 317 (alterations in original) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 472, 476 (1985); Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984); Grimes v. Vitalink Commc'ns Corp., 17 F.3d 1553, 1559 (3d Cir. 1994)). General jurisdiction, however, may be exercised by a court when foreign corporations' "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." See id. (citations omitted). A corporate defendant is usually found to be "at home" in the state of the corporation's place of incorporation or principal place of business. See id. at 760. However, a corporate defendant can sometimes be found to be "at home" in another state where its operations in that state are "so 'continuous and systematic' as to render [it] essentially at home in the forum State." See id. at 761 (citation omitted).

## III. DISCUSSION

### A. Whether United Rentals' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) Should Be Granted

As an initial matter, the Court addresses Plaintiffs' failure to oppose Defendant United Rentals' motion to dismiss. Pursuant to Rule 7.6 of the Local Rules of Court for the Middle District of Pennsylvania, a party opposing a motion to dismiss "shall file a brief in opposition within fourteen (14) days after service of the movant's brief," and a party "who fails to comply with this rule shall be deemed not to oppose such a motion." See L. R. 7.6. The Court of Appeals for the Third Circuit has held that dismissal of a case for failure to comply with a local rule is a "drastic sanction" which should, with few exceptions, follow a merits analysis. See Stackhouse v. Mazurkiewicz, 951 F.2d 29, 30 (3d Cir. 1991); see also Shuey v. Schwab, 350 F. App'x 630, 632-33 (3d Cir. 2009). Accordingly, although the Court deems Defendant United Rentals' motion to dismiss unopposed pursuant to Local Rule 7.6, it will address the merits of Defendant United Rentals' motion.[7]

In moving to dismiss both Plaintiffs' negligent entrustment and vicarious liability claims asserted against it (Counts VII and VIII), United Rentals argues that those claims fail to state a claim upon which relief may be granted, maintaining that Plaintiffs have not pled sufficient facts to support either claim. (Doc. No. 35 at 4-9.) As to Plaintiffs' claim for negligent entrustment against United Rentals (Count VII), which is based on Plaintiffs' allegation that United Rentals negligently entrusted the truck driven by Watkins to Energy MAT or its employee Watkins, United Rentals argues that the Third Amended Complaint fails to plead (1) that United Rentals owned the truck or had any control over the truck at the time of or before the collision, and (2) even if the Third Amended Complaint pleads that United Rentals owned/controlled the truck, it fails to plead facts plausibly showing that United Rentals "had or should have had knowledge

---

[7] As noted above, Defendants Watkins and SpringLine filed a response indicating that they do not oppose Defendant United Rentals' motion to dismiss Plaintiffs' claims against it. (Doc. No. 43.)

9

that Spring[L]ine would provide the [t]ruck to [Energy MAT]," who would then permit an allegedly unsafe driver (Watkins) to operate the truck. (Id. at 4.) United Rentals also maintains that the Third Amended Complaint fails to adequately allege that United Rentals owed any duty to investigate Defendant SpringLine or Defendant Energy MAT's potential drivers. (Id.)

As to the vicarious liability claim asserted against it (Count VIII), United Rentals argues that the language of the Third Amended Complaint actually pleads a vicarious liability claim against SpringLine in Count VIII, not United Rentals (id. at 9), and that even if the Third Amended Complaint alleges a vicarious liability claim against it, any such claim is barred by the Graves Amendment (id. at 9-10). The Court first addresses Plaintiffs' negligent entrustment claim asserted against United Rentals.

### 1. Negligent Entrustment

Pennsylvania law requires three elements to state a prima facie claim for negligent entrustment: (1) a defendant permitted a third person (2) to use a thing or engage in an activity which is under the control of the defendant (3) when the defendant knows or should know that such person is likely to use the thing or conduct himself in such a manner as to create an unreasonable risk of harm to others. See Ferry v. Fisher, 709 A.2d 399, 403 (Pa. Super. Ct. 1998).

The Court is persuaded by United Rentals' argument that the Third Amended Complaint fails to allege facts supporting a reasonable inference that United Rentals controlled the vehicle at issue and permitted a third person to use the vehicle when it knew or should have known that such person would use the vehicle in a manner creating an unreasonable risk of harm, so as to support a claim for negligent entrustment. As an initial matter, the allegations of the Third Amended Complaint are somewhat confusing as to the issue of ownership or control. In

paragraph 8 of the Third Amended Complaint, Plaintiffs allege that Defendant "Watkins[] was operating a pick-up truck owned by Defendant[] [SpringLine]." (Doc. No. 41 ¶ 8.) In paragraph 19 of the Third Amended Complaint, Plaintiffs allege that "Defendant [SpringLine] rented a vehicle from [United Rentals] who in turn[] negligently entrusted said vehicle to Defendant [Energy MAT]," who "then allowed the vehicle to be driven by Defendant [Watkins]." (Id. ¶ 19.) However, regardless of the confusing nature of Plaintiffs' allegations, and even assuming arguendo that the Third Amended Complaint alleges facts supporting a reasonable inference that United Rentals owned/controlled the truck at issue, the Third Amended Complaint fails to allege facts supporting a reasonable inference that United Rentals "knew or should have known" that the potential driver of the truck was likely to use the truck in an unsafe manner, beyond a conclusory allegation to that effect. The relevant allegations of the Third Amended Complaint state as follows:

> Defendant [United Rentals] knew or should have known that Defendant [SpringLine] would give permission to Defendant [Energy MAT] to use the vehicle for purposes of conducting business. Allowing Defendant [Energy MAT] to use the rented vehicle opened up the potential for liability of entrusting the vehicle to a driver who was not a safe or prudent driver. Defendant [Watkins] was allowed to drive the rented vehicle and by granting him such permission, the vehicle was negligently entrusted to him.

(Id. ¶ 20.) United Rentals correctly notes that these allegations consist of the conclusory assertion of the legal elements of a negligent entrustment claim, as opposed to well-pled facts sufficient to allege a "plausible claim for relief." See Fowler, 578 F.3d at 210-11. The Third Amended Complaint fails to allege any facts supporting a reasonable inference that United Rentals knew or should have known that a driver was likely to use the vehicle at issue in such a manner as to create an unreasonable risk of harm to others. Accordingly, the Third Amended

11

Complaint fails to state a claim for negligent entrustment against United Rentals and, therefore, the Court will grant United Rentals' motion to dismiss the claim.

### 2. Vicarious Liability

As to Plaintiffs' claim for vicarious liability against United Rentals (Count VIII), United Rentals maintains that despite the heading of the Third Amended Complaint stating "Vicarious Liability of United Rentals, Inc. Pursuant to Federal Motor Carrier Safety Regulations," the body of paragraph 21 instead asserts only a vicarious liability claim against Defendant SpringLine, alleging that "Defendant [SpringLine] negligently entrusted a vehicle rented from Defendant [United Rentals] to Defendant [Energy MAT]. Such entrustment constitutes vicarious liability on the part of [SpringLine]." (Doc. No. 41 ¶ 21.) Therefore, even setting aside the conclusory nature of this assertion, the plain allegations of the Third Amended Complaint fail to state a vicarious liability claim against United Rentals, and accordingly, the Court will grant United Rentals' motion to dismiss the claim. The Court next turns to an assessment of Defendant SpringLine's motion to dismiss based on Federal Rule of Civil Procedure 12(b)(2).

### B. Whether SpringLine's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(2) Should Be Granted

In light of the parties' briefing on the issue of personal jurisdiction – in which both parties appear to accept the fact that specific jurisdiction is the only possible basis for this Court to exercise personal jurisdiction over SpringLine because Plaintiffs do not maintain that SpringLine has "affiliations with [Pennsylvania that] are so 'continuous and systematic' as to render [it] essentially at home" in Pennsylvania, see Daimler, 134 S. Ct. at 754 – the Court's analysis of personal jurisdiction addresses only the potential existence of specific jurisdiction.

### 1. Arguments of the Parties

#### a. Defendant SpringLine's Arguments in Favor of Dismissal

In its brief in support of its Motion to Dismiss, Defendant SpringLine argues that this Court lacks jurisdiction over it "since it does not have any offices or employees in the Commonwealth of Pennsylvania and its excavating and utility services limits its business operations to Michigan only." (Doc. No. 26 at 3.) Initially, SpringLine maintains that the allegations of the Third Amended Complaint fail to establish either specific or general jurisdiction over SpringLine because as to jurisdiction over SpringLine the Third Amended Complaint alleges only that SpringLine "is a limited liability company whose principal place of business is located at 10560 Grand River Avenue, Detroit, Michigan 48204. At the time of the incident made the basis of this lawsuit, [SpringLine] was operating and doing business in the state of Pennsylvania." (Doc. No. 41 ¶ 3.)

Further, in an affidavit submitted as Exhibit B in support of its motion to dismiss, SpringLine's President, Steve Rooker ("Rooker"), attests as follows:

1. [SpringLine] is in the business of performing commercial excavating and underground utility work.

2. [SpringLine]'s work involves the rehab of water main and sewer lines for new state, county and municipal developments and road projects.

3. [SpringLine]'s only office is located at 32945 Folsom Rd., Farmington Hills, MI, 48336.

4. [SpringLine] provides commercial excavating and underground utility service work in Michigan only.

5. [SpringLine] does not have an office in the Commonwealth of Pennsylvania.

6. [SpringLine] does not have any employees which reside or work in the Commonwealth of Pennsylvania.

7. [SpringLine] does not conduct any business in the Commonwealth of Pennsylvania.

8. [SpringLine] is not registered to conduct business in the Commonwealth of Pennsylvania.

9. [SpringLine] does not, and has never, employed Garrett Lee Watkins.

10. [SpringLine] did not own the truck operated by Garrett Lee Watkins referenced in Plaintiff's Complaint on the day of loss.

(Doc. No. 25-2 ¶¶ 3-12.) Based on the allegations of Plaintiffs' Third Amended Complaint, as well as the jurisdictional facts offered by way of the affidavit of SpringLine's President, Rooker, SpringLine maintains that it has no contacts with the Commonwealth of Pennsylvania and, accordingly, that this Court lacks specific jurisdiction over it. (Doc. No. 26 at 6.)

### b. Plaintiffs' Arguments Against Dismissal

In opposition to SpringLine's motion, Plaintiffs submitted a brief (Doc. No. 44) and an affidavit of Plaintiffs' counsel (Doc. No. 45), authenticating various exhibits submitted in opposition to SpringLine's motion (Doc. Nos. 45-1 to 45-20).[8] In their brief, Plaintiffs argue first that Defendants SpringLine and Energy MAT (Defendant Watkins' employer) are "alter egos" and therefore, "the contacts and conduct of both entities should be imputed to each other." (Doc. No. 44 at 1-2.) Plaintiffs maintain that the exhibits submitted by them in opposition to SpringLine's motion demonstrate that Defendants SpringLine and Energy MAT "share addresses, employees, and principals, among other commonalities." (Id. at 2.) Specifically, Plaintiffs note that an individual named Evan Mosley represented himself as the "Director of R & D" on a contract for Energy MAT, while also (during the same period of time) representing himself to be the Director of Research and Development for SpringLine on his LinkedIn page. (Id. at 3, 8.) Plaintiffs characterize Energy MAT as "Springline's sister company," arguing that the evidence adduced through jurisdictional discovery demonstrates that the two companies are "two arms of the same company." (Id. at 4, 6-7.)

---

[8] The exhibits submitted by Plaintiffs include SpringLine's responses to interrogatories, requests for admission, and production of documents (Doc. Nos. 45-1 to 45-6, 45-9, 45-14), as well as website content (Doc. Nos. 45-7 to 45-8, 45-10 to 45-13, and 45-15 to 45-19).

Plaintiffs maintain that "[s]pecifically relevant for a jurisdictional analysis is the fact that" SpringLine admitted in its responses to Plaintiffs' requests for admission that it "signed the rental agreement with the company that supplied the truck that . . . Watkins was driving 'on behalf of' [Energy MAT] when he hit Raymond Mildren." (Id. at 3-4.)  Plaintiffs point out that SpringLine also admits in its responses to Plaintiffs' requests for admission that Watkins "had Springline's permission prior to November 22, 2016 to operate the Truck on behalf of his employer, [Energy MAT] within the Commonwealth of Pennsylvania."  (Id. at 4-5.)  As further evidentiary support for its position that this Court has personal jurisdiction over Defendant SpringLine, Plaintiffs point to the subcontract under which Energy MAT was performing work in the Commonwealth of Pennsylvania (and for which Defendant Watkins was driving the truck at the time of the collision), produced in connection with jurisdictional discovery in this matter, which identifies Rooker (SpringLine's President) as the contact person for Energy MAT on the relevant contract.  (Id. at 5.)  Plaintiffs maintain that the facts proffered by them by way of affidavit and exhibit in opposition to SpringLine's motion permit them to establish a prima facie case as to this Court's personal jurisdiction over SpringLine.

### 2. Whether this Court has Personal Jurisdiction Over SpringLine

Upon careful consideration of the record, the parties' arguments, and the applicable law, this Court concludes that SpringLine does not have sufficient minimum contacts with Pennsylvania to support this Court's exercise of personal jurisdiction over it.  Accordingly, the Court will grant SpringLine's motion to dismiss Plaintiffs' claims against it for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).

As an initial matter, the Court is unpersuaded by Plaintiffs' argument that SpringLine and Energy MAT should be considered corporate "alter egos" such that Energy MAT's contacts with

Pennsylvania should be attributed to SpringLine for purposes of determining the existence of personal jurisdiction over it. The question of the existence of personal jurisdiction over a corporate entity under an alter ego theory is generally applicable in the context of a parent corporation and its subsidiary. See Enter. Rent-A-Car Wage & Hour Empl. Practices Litig. v. Enter. Rent-A-Car Co., 735 F.Supp.2d 277, 317 (W.D. Pa. 2010) (stating that whether the alter-ego theory supports the existence of personal jurisdiction "depends upon the details of the unique relationship between the parent corporation and its subsidiary"). To prevail under this theory with regard to the existence of personal jurisdiction over the parent corporation, a plaintiff must generally establish that "the parent controls the day-to-day operations of the subsidiary such that the subsidiary can be said to be a mere department of the parent." See id. at 318. Courts have generally assessed corporate dependence (or alter ego status) utilizing a ten-factor test, examining whether:

(1) the parent owns all or a significant majority of the subsidiary's stock,

(2) commonality of officers or directors exists between the two corporations,

(3) the corporate family possesses a unified marketing image, including common branding of products,

(4) corporate insignia[s], trademarks, and logos are uniform across corporate boundaries,

(5) corporate family members share employees,

(6) the parent has integrated its sales and distribution systems with those of its subsidiaries,

(7) the corporations exchange or share managerial or supervisory personnel,

(8) the subsidiary performs business functions that would ordinarily be handled by a parent corporation,

(9) the parent uses the subsidiary as a marketing division or as an exclusive distributor, and

> (10) the parent exercises control or provides instruction to the subsidiary's officers and directors.

Id. at 318-19 (citations omitted).

As noted by SpringLine and not contested by Plaintiffs, neither SpringLine nor Energy MAT is a parent company of the other, rendering many of the elements of the ten-factor alter ego test – factors (1), (6), (8), (9), and (10) – inapplicable. Plaintiffs do not allege that the two companies possessed a "unified marketing image" (factor (3)), or share uniform trademarks or logos (factor (4)). Accordingly, the only elements of the ten factor test potentially implicated here are: (2) commonality of officers or directors, (5) corporate family members share employees, and (7) whether the corporations exchange or share managerial or supervisory personnel.

As attested to by SpringLine and not contested by Plaintiffs, the two companies are separate legal entities. (Doc. No. 51-2 at 3.) SpringLine admits that Rooker has an ownership interest in both companies. (Doc. No. 51 at 7.) As attested to by Rooker, the two companies serve different purposes; SpringLine "is in the business of performing commercial excavating and underground utility work" in "Michigan only" (Doc. No. 25-2 at 13), while Energy MAT "provides temporary and permanent right of way access to transmission electrical companies and also provides soil erosion and sediment control and restoration to electrical transmission companies" (Doc. No. 51-2 at 3). Plaintiffs point to evidence suggesting that Energy MAT shares office space at SpringLine's office in Michigan (Doc. Nos. 45-12, 45-13), and that an employee (Evan Mosley) performs some activities on behalf of both companies (Doc. Nos. 45-6 at 20, 45-8 at 1).

In light of the many elements of the multi-factor alter ego test that are simply inapplicable to the instant situation involving two apparent sister companies, the Court does not

view the limited commonalities between SpringLine and Energy MAT as sufficient evidence of "intrusive control" of Energy MAT by SpringLine such that the two companies are functionally alter egos and, therefore, Energy MAT's contacts with Pennsylvania should be attributed to SpringLine for purposes of determining personal jurisdiction. See, e.g., In re Chocolate Confectionary Antitrust Litig., 674 F. Supp. 2d 580, 598 (M.D. Pa. 2009) (discussing ten-factor alter ego test with regard to a parent and subsidiary and noting that "[m]ore intrusive control" beyond the usual supervision exercised by a parent over a subsidiary is required to satisfy the test). Plaintiffs cite Boychek v. Connaught Labs, Inc., 674 F. Supp. 514 (W.D. Pa. 1987) in support of their argument that the commonalities between SpringLine and Energy MAT justify a finding of "alter ego" status; however, the Court is unpersuaded that Boychek supports such a finding here between these sister companies because in that case, the four interrelated companies at issue consisted of parent and subsidiary companies either wholly or partly owned by each other. See id. at 515.

Setting aside Plaintiffs' alter ego argument, the Court is similarly unpersuaded that Plaintiffs have met their burden to establish a prima facie case of personal jurisdiction over SpringLine under the specific jurisdiction test. As noted above, the exercise of specific jurisdiction requires that: (1) the defendant purposefully direct activities at the forum; (2) the litigation arises out of or relates to these activities; and (3) if the first two requirements are met, the exercise of jurisdiction comports with "fair play and substantial justice." See O'Connor, 496 F.3d at 317 (citations omitted).

Plaintiffs base their arguments as to SpringLine's "purposeful direction" of activities at Pennsylvania resulting in this litigation on the fact that SpringLine signed the rental agreement to obtain the truck Defendant Watkins was driving (on behalf of Energy MAT) when he collided

with Raymond Mildren, and that SpringLine authorized Watkins to drive the truck to fulfill his duties to Energy MAT. Plaintiffs fail to cite any cases where a court has found minimum contacts sufficient to support specific jurisdiction under similar circumstances. The case cited by Plaintiffs, Abramson v. Agentra, LLC, No. 18-615, 2018 WL 6617819, at *5 (M.D. Pa. Dec. 18, 2018), involves a claim for violation of the Telephone Consumer Protection Act where a defendant purposely directed contacts at Pennsylvania by contacting the plaintiff's Pennsylvania mobile and residential telephone numbers. The facts of that case are inapplicable to those of the instant case, and therefore, the Court finds the reference unpersuasive. The Court finds that the single contact between SpringLine and Pennsylvania identified by Plaintiffs – SpringLine's signature on the rental agreement for the truck driven by Defendant Watkins and accompanying permission given to Defendant Watkins to drive the truck – is insufficient to satisfy the minimum contacts required for specific jurisdiction. Therefore, the Court will grant SpringLine's motion to dismiss for lack of personal jurisdiction.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendant United Rentals' motion to dismiss, and grant Defendant SpringLine's motion to dismiss. An Order consistent with this Memorandum follows.